## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Worldwide Machinery Group, Inc., *et al.*,[1] | ) | Case No. 25-90379 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

### DEBTORS' <u>EMERGENCY</u> MOTION TO COMPEL PRODUCTION

---

**Emergency relief has been requested.  Relief is requested not later than Monday, October 6, 2025 (prevailing Central Time).**

**If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

---

Pursuant to Federal Rule of Civil Procedure 26 and Federal Rules of Bankruptcy Procedure 7026 and 9014, the above captioned debtors and debtors in possession (the "**Debtors**"), by and through their undersigned counsel, hereby submit this *Emergency Motion to Compel Production* (the "**Motion**") from Key Equipment Finance, a division of KeyBank National Association, as administrative agent (in such capacity, the "**Agent**") for the ABL Lenders and respectfully state as follows:[2]

### PRELIMINARY STATEMENT

1.    This dispute arises from the Agent's refusal to produce any agreements that it or the ABL Lenders have entered into with Gordon Brothers regarding the Debtors or their claims.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Worldwide Machinery Group, Inc. (8029), Worldwide Machinery, Ltd. (3666), Worldwide Operating, Inc. (7023), and Worldwide Machinery GP, LLC (5399).  The location of Debtor Worldwide Machinery Group, Inc.'s corporate headquarters is 2200 Post Oak Boulevard, Suite 1000, Houston, Texas 77056.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Debtors' document requests, which are attached as **Exhibit A**.

The Agent makes this refusal despite having described an agreement with Gordon Brothers in its objection to the Debtors' cash collateral motion [Docket No. 18] (the "**Cash Collateral Motion**"). The agreements with Gordon Brothers are highly relevant to the parties' several disputes and would pose no burden to produce. The Court should compel production.

2.      On September 14, 2025—now more than two weeks ago—the Debtors served eight document requests on the Agent in connection with the Agent's objection to the Cash Collateral Motion. The Debtors' requests were purposefully tailored to be unburdensome, seeking only specific documents and no written communications.

3.      Twelve days later, on September 26, 2025, the Agent served responses and objections to the Debtors' document requests (the "**R&Os**").[3]  Among other things, the Agent refused to produce any agreements between itself or the ABL Lenders and Gordon Brothers. The Agent asserted that the agreements with Gordon Brothers are irrelevant to the cash collateral dispute, and that the Debtors' request for those agreements "imposes an undue burden because [of] the effort and expense of identifying, gathering, and producing the requested documents." *See generally* R&Os. At the same time as it served the R&Os, the Agent produced to the Debtors four documents totaling 80 pages, certain of which were documents created by the Debtors. The Debtors understand that the Agent will not produce any further documents.

4.      On September 26, 2025, counsel to the Agent and the Debtors met and conferred regarding the Debtors' document requests. The Agent informed the Debtors that it did not possess responsive documents to certain of the Debtors' requests, meaning that only the agreements with Gordon Brothers remained in dispute. The Debtors stated the following position:

---

[3] The R&Os are attached as **Exhibit B**.

a.  **First**, the notion that the Agent would be burdened by "the effort and expense of identifying, gathering, and producing" the Gordon Brothers agreements is simply false.  The Agent had already "identified" these agreements in detail in its cash collateral objection.  Initial Obj. ¶ 14, Docket No. 45 (the "**Initial Objection**"), (stating that the ABL Lenders "executed a term sheet" with Gordon Brothers and describing the terms).

b.  **Second**, the Agent's relevance objection is meritless.  The Agent cannot put the agreements with Gordon Brothers at issue in its Initial Objection and then claim that they are irrelevant when the Debtors request them.  Additionally, the Agent states in its Initial Objection that "any holder of the Senior Obligations would consider the Diversified Bid if it believed it would maximize the value of the [Debtors]."  Initial Obj. at ¶ 15.  The Debtors have the right to test the Agent's claim, including by seeing whether the ABL Lenders' agreement to sell their claims to Gordon Brothers would maximize value for the estate beyond the Diversified Bid.  Again, it is the Agent who put this at issue.

c.  **Third**, the Agent acknowledges that the agreement with Gordon Brothers contains an exclusivity provision.  Initial Obj. at ¶ 15 (noting that the term sheet contained "a short exclusivity period during which the Senior Secured Lenders agreed that they would not sell the Senior Obligations to another party").  That exclusivity agreement violates the terms of the NDA that Gordon Brothers executed in connection with its participation in the Debtors' liquidation bidding process.  It is critical that the Debtors receive this exclusivity agreement so that they can determine whether the ABL Lenders' conduct gives rise to claims

(including, among other things, tortious interference with contract), which could result in the equitable subordination of the ABL Lenders' security interests or claims. If that were to occur, there would be no cash collateral dispute, as the Debtors' cash would not be the ABL Lenders' collateral.

d.  ***Finally***, even if the ABL Lenders' agreement to sell their claims to Gordon Brothers were not relevant to the cash collateral dispute (which it is), it is certainly relevant to the disputes regarding the Debtors' sale motion [Docket No. 101] (the "**Sale Motion**") and the Agent's motion to lift the stay [Docket No. 100] (the "**Lift Stay Motion**"), which will be heard at the same time.

5.      Despite these points, on the meet-and-confer, the Agent maintained its refusal to produce any agreements with Gordon Brothers. Specifically, the Agent asserted that the agreements (i) are not relevant to any of the pending disputes before the Court, and (ii) cannot be produced because they are commercially sensitive.

6.      None of these arguments holds water. As shown above, the ABL Lenders' agreement with Gordon Brothers is plainly relevant to the disputes pending before the Court, and certainly falls within the broad scope of permissible discovery under Federal Rule 26. Moreover, it is for the Court, not the Agent, to determine relevance. Given that production of the agreements poses no burden to the Agent, the Agent should produce the documents and let the Court decide what weight to give them, as Federal Rule 26 requires.

7.      Additionally, the Agent's concerns regarding protecting confidentiality do not support its refusal to produce responsive documents. The parties have agreed to the terms of a stipulated protective order [Docket No. 112] (the "**Protective Order**"), which fully addresses the Agent's concerns. Nonetheless, to further resolve the Agent's concerns, the Debtors will stipulate

that any agreements with Gordon Brothers that the Agent produces will be shared solely with the Debtors' professionals and the members of the Debtors' restructuring committee, and will be filed under seal.

8.      For these reasons, the Debtors respectfully request that the Court compel discovery as set forth herein.

## JURISDICTION, VENUE, AND PREDICATES FOR RELIEF

9.      The United States Bankruptcy Court for the Southern District of Texas (the "**Court**") has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding under 28 U.S.C. § 157(b).  The Debtors confirm their consent to the entry of a final order by the Court.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

10.      The predicates for the relief requested herein are sections 105(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), rules 26 and 34 of the Federal Rules of Civil Procedure ("**Federal Rules**"), as made applicable by rules 7026, 7034 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## RELIEF REQUESTED

11.      Through this Motion, the Debtors seek an order compelling the Agent to produce agreements with Gordon Brothers in response to requests number 1, 2, 3, and 4 of the attached document requests, and granting such other relief as the Court finds just and proper.

## FACTUAL BACKGROUND

12.      On September 13, the Debtors filed the Cash Collateral Motion.  On September 14, the Debtors served the Document Requests.   On September 15, the Agent filed the Initial Objection.

13.     On September 15, the Court held a hearing regarding the Cash Collateral Motion. Following the hearing, the Court approved the Cash Collateral Motion on an interim basis [Docket No. 54] and calendared the final hearing on the Cash Collateral Motion for October 9, 2025.

14.     On September 26, 2025, the Agent served the R&Os.  The Agent refused to produce any documents in response to five of the eight requests, even where the Agent acknowledged that it has responsive documents in its possession.  Additionally, the Agent produced only four documents to the Debtors, certain of which appear to have come from the Debtors themselves.

15.     On September 29, 2025, the parties held a meet-and-confer.  The Agent asserted that it lacked documents responsive to certain of the requests, thus resolving certain disputes. However, the parties were unable to resolve their dispute regarding the Debtors' requests for the Agent's and ABL Lenders' agreements with Gordon Brothers.  The Debtors informed the Agent that they would need to seek relief from the Court.

16.     On September 30, 2025, the parties agreed to adjourn the final hearing on the Cash Collateral Motion to occur at the same time as the Sale Motion and Lift Stay Motion.  A hearing on all three motions has been calendared for October 22, 2025, i.e. just three weeks from the date of this Motion.

## ARGUMENT

### THE COURT SHOULD COMPEL THE AGENT TO PRODUCE THE AGREEMENTS WITH GORDON BROTHERS REGARDING THE DEBTORS

17.     The Debtors are entitled to discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."  Fed. R. Civ. P. 26(b)(1).  Federal Rule 26 embodies a broad discovery policy and is liberally construed in favor of disclosure.  *See, e.g.*, *In re LeBlanc*, 559 F. App'x 389, 392 (5th Cir. 2014) (noting that Federal Rule 26(b) "sets the scope of discovery broadly"); *see also Wiwa v. Royal Dutch Petroleum Co.*,

392 F.3d 812, 820 (5th Cir. 2004) ("Under the federal discovery rules, any party to a civil action

is entitled to all information relevant to the subject matter of the action before the court unless such

information is privileged."); *In re Trevino*, 564 B.R. 890, 903 (Bankr. S.D. Tex. 2017) ("Rule 26

casts a very wide net as to what is included in the scope of discovery.").

18.     The Debtors' discovery requests fall squarely within the broad ambit of Federal

Rule 26.  There is no argument that the documents that the Debtors seek are privileged; the Agent

simply does not wish to produce them.  Each of the Agent's objections is meritless, and the Court

should compel production.

### A. *The Debtors' Requests Are Not Burdensome.*

19.     The Debtors chose not to seek any email communications from the Agent, which

can be difficult and time-consuming to search for and produce, and instead requested only specific,

targeted documents that the Agent could easily identify.   Indeed, despite the Agent's

burdensomeness objection, the Agent states that "[r]esponsive documents are being withheld on

the basis of the stated objections"—meaning that the Agent has already identified responsive

documents and it would impose no burden on the Agent to produce them.  *See generally* R&Os.

Additionally, the Agent clearly indicated awareness of the documents being requested in its Initial

Objection by describing those documents in detail, thus both putting them at issue and

demonstrating that the documents are readily available to the Agent and can easily be produced.

Initial Obj. at ¶ 14.

### B. *The Debtors' Requests are Relevant.*

20.     What documents are relevant to this dispute is for the Court, not the Agent, to

decide.  Regardless, the documents the Debtors seek *are* relevant—as the Agent itself has shown.

For example, the Agent's Initial Objection states that the ABL Lenders and Gordon Brothers

executed a term sheet in connection with the sale of the ABL Lenders' claims, which "included a short exclusivity period during which the Senior Secured Lenders agreed that they would not sell the Senior Obligations to another party, among other things." *Id.* The Agent cannot raise the sale agreement and exclusivity agreement with Gordon Brothers in its Initial Objection, thus putting those documents at issue, and then call them irrelevant when the Debtors ask the Agent to produce them.

21.     Additionally, the Agent's entry into the exclusivity agreement with Gordon Brothers, which violated the terms of Gordon Brothers' NDA with the Debtors (as the Agent surely knew), may constitute grounds for equitably subordinating the Agent's claims and security interests. This matter is plainly relevant to the Cash Collateral Motion, since, if the Agent's claims or liens are subordinated, it will have no grounds to object. Further, these documents, which relate to alternative transactions that the Agent has accepted, are relevant to the disputes regarding the Sale Motion and Lift Stay Motion, which will be heard together with the Cash Collateral Motion.

22.     Finally, the Agent argues in its Lift Stay Motion and opposition to the Cash Collateral Motion that these cases are being run for the benefit of the Greenbergs and the Debtors' professionals. That is simply not the case. These cases are being run to obtain approval of the Diversified sale, subject to higher and better offers. If closed, the Diversified sale will maximize value, not only for the ABL Lenders, but for the Debtors' trade creditors and a substantial number of their employees. The terms under which the ABL Lenders were willing to sell their debt is clearly relevant to the evaluation of the Diversified Bid (or any higher or better bid). That is especially the case here, where the ABL Lenders would not grant the Debtors any additional forbearances unless the Debtors consented to the very Gordon Brothers transaction that the ABL Lenders now seek to keep hidden.

**C.  *The Agent's Concerns Regarding Confidentiality Are Fully and Adequately Addressed by the Proposed Protective Order in This Case***

23.     The Agent's alleged lack of confidence in the Court's long-standing and commonly used protective measures is both unfounded and irrelevant.  Producing the documents under the stipulated Protective Order with an appropriate confidentiality designation will adequately protect those documents during discovery.  Moreover, any document designated as containing confidential information will be filed under seal, thus sufficiently addressing all of the Agent's concerns about wrongful disclosures.  Additionally, the Debtors will agree to share the documents only with their advisors and their restructuring committee.

<u>**EMERGENCY RELIEF**</u>

24.     The Debtors request emergency consideration of this Motion. The hearing regarding the Cash Collateral Motion, Sale Motion, and Lift Stay Motion has been scheduled for October 22, 2025, a matter of weeks away.  The Debtors cannot take depositions or prepare their case unless they receive the requested documents sufficiently ahead of the hearing date.  For this reason, conducting a hearing on the Motion on less than 28 days' notice is appropriate pursuant to Bankruptcy Rule 3017, and the Debtors request that the Court approve the relief requested in this Motion on an emergency basis.

WHEREFORE, the Debtors respectfully request that the Court enter an order:

i.  Compelling the Agent to provide any formal or informal agreements or arrangements between the ABL Lenders and/or the Agent, on the one hand, and Gordon Brothers, on the other hand, relating to the Debtors, including, but not limited to, any claims of the ABL Lenders and/or the Agent against the Debtors;

ii.  Compelling the Agent to provide any Exclusivity Agreement;

iii.  Compelling the Agent to provide any formal or informal agreements, arrangements, offers, or term sheets between the ABL Lenders and/or the Agent, on the one hand, and Gordon Brothers, on the other hand, relating to Gordon Brothers' potential purchase, assignment or assumption of the ABL Loan or the ABL Lenders' rights in connection with the ABL Loan;

iv.  Compelling the Agent to provide any formal or informal agreements or arrangements between the ABL Lenders and/or the Agent, on the one hand, and Gordon Brothers, on the other hand, relating to the Forbearance Agreements; and

v.  Granting such other and further relief as the Court deems necessary and proper.

October 1, 2025
Houston, Texas

*/s/ Charles R. Koster*

**WHITE & CASE LLP**
Charles R. Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone:   (713) 496-9700
Email:        charles.koster@whitecase.com

- and -

**WHITE & CASE LLP**
David M. Turetsky (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:   (212) 819-8200
Email:        david.turetsky@whitecase.com
              sam.hershey@whitecase.com

**WHITE & CASE LLP**
Roberto Kampfner (admitted *pro hac vice*)
Patrick Wu (Texas Bar No. 24117924)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone:   (213) 620-7700
Email:        rkampfner@whitecase.com
              patrick.wu@whitecase.com

- and -

**WHITE & CASE LLP**
Fan B. He (admitted *pro hac vice*)
Kristin Schultz (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone:   (305) 371-2700
Email:        fhe@whitecase.com
              kristin.schultz@whitecase.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>Certificate of Accuracy</u>**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

*/s/ Charles R. Koster*

**<u>Certificate of Service</u>**

I certify that on October 1, 2025, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

*/s/ Charles R. Koster*

12

# **EXHIBIT A**

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Worldwide Machinery Group, Inc., *et al.*,[1] | ) | Case No. 25-90379 (CML) |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) |  |

**DEBTORS' FIRST SET OF REQUESTS FOR**
**THE PRODUCTION OF DOCUMENTS TO KEY EQUIPMENT FINANCE IN**
**CONNECTION WITH THE *DEBTORS' EMERGENCY MOTION FOR ENTRY OF***
***INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO USE CASH***
***COLLATERAL, (II) GRANTING ADEQUATE PROTECTION FOR THE USE OF CASH***
***COLLATERAL, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING***
***RELATED RELIEF***

Please take notice that, pursuant to Federal Rules of Civil Procedure 26 and 34, made

applicable by Federal Rules of Bankruptcy Procedure 7026, 7034, and 9014, the Debtors in the

above-captioned cases, by and through their undersigned counsel, hereby request that Key

Equipment Finance, a division of KeyBank National Association (included in the definition of

"Agent" below) produce the below documents (the "Document Requests") in connection with the

*Debtors' Emergency Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Use*

*Cash Collateral, (II) Granting Adequate Protection for the Use of Cash Collateral,*

*(III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [Dkt. No. 18] (the "**Cash**

**Collateral Motion**")[2] at the offices of White & Case LLP, attn.: Samuel P. Hershey, 1221 Avenue

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Worldwide Machinery Group, Inc. (8029), Worldwide Machinery, Ltd. (3666), Worldwide Operating, Inc. (7023), and Worldwide Machinery GP, LLC (5399). The location of Debtor Worldwide Machinery Group, Inc.'s corporate headquarters is 2200 Post Oak Boulevard, Suite 1000, Houston, Texas 77056.

[2] The Agent has informed the Debtors that it will not consent to the Debtors' use of cash collateral and that it intends to object to the relief requested in the Cash Collateral Motion.

of the Americas, New York, NY 10020 (sam.hershey@whitecase.com), by 5:00 p.m. (prevailing Central Time) on September 17, 2025, or such other date and location as the parties may agree.

## DEFINITIONS

For the purposes of these Document Requests, the following definitions shall apply:

1.      "ABL Credit Agreement" shall mean that certain Second Amended and Restated Credit Agreement entered between Worldwide Machinery, Ltd. and Worldwide Operating, Inc., as borrowers, and Key Equipment Finance, KeyBank National Association, and PNC Bank National Association, as lenders, on January 25, 2022 (as amended, amended and restated, supplemented, or otherwise modified prior to the Petition Date).

2.      "ABL Lenders" shall mean Key Equipment Finance, KeyBank National Association, Pruco Life Insurance Company, the Prudential Insurance Company of America, Prudential Legacy Insurance Company of New Jersey, PNC Bank National Association, Comerica Bank, Trustmark National Bank, First-Citizens Bank & Trust Company, as lenders under the ABL Credit Agreement, and any of their respective current or former affiliates, subsidiaries, parent corporations, predecessors, or successor entities and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

3.      "ABL Loan" shall mean the secured revolver due 2024 issued under the ABL Credit Agreement.

4.      "Agent" shall mean Key Equipment Finance, a division of KeyBank National Association, in its capacity as administrative agent for the ABL Lenders, and any of their respective current or former affiliates, subsidiaries, parent corporations, predecessors, or successor entities and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

2

5.       "Any" or "each" should be understood to include and encompass "all;" "or" should be understood to include and encompass "and;" and "and" should be understood to include and encompass "or."

6.       "Bankruptcy Court" means the United States Bankruptcy Court for the Southern District of Texas.

7.       "Debtors" shall mean the above-captioned debtors in these chapter 11 cases.

8.       "Diversified" shall mean Diversified Fleet Holding, LLC.

9.       "Diversified Bid" shall mean the bid that the Debtors received from Diversified (as refined, amended, or otherwise modified prior to the Petition Date) and reflected in the Diversified LOI, in connection with the Going-Concern Sales Process.

10.       "Diversified LOI" shall mean the non-exclusive letter of intent dated August 20, 2025, between Diversified and the Debtors, in connection with the Going-Concern Sales Process.

11.       "Document(s)" shall include any printed, written, typed, recorded, transcribed, taped, photographic, or graphic mater, however produced or reproduced, including, but not limited to: any letter, correspondence, or communication of any sort, including Bloomberg or text messages; film, print or negative of photograph; sound recording; video recording; note, notebook, diary, calendar, minutes, memorandum, contract, agreement, or any amendment thereto; telex, telegram, cable; summary, report or record of telephone conversation, voice mail or voice mail back-up, personal conversation, discussion, interview, meeting, conference, investigation, negotiation, act or activity; projection, work paper, or draft; computer or compute network output or input, hard or floppy disc, e-mail, magnetic and/or optical medias, archived or back up data on any of these medias, and documents that have been deleted but are recoverable from any of these medias; opinion or report of consultant; request, order, invoice or bill of lading;

3

analysis, diagram, map, index, sketch, drawing, plan, chart, manual, brochure, pamphlet, advertisement, circular, newspaper or magazine clipping, press release; receipt, journal, ledger, schedule, bill, or voucher; financial statement, statement of account, bank statement, checkbook, stubs, or register, cancelled check, deposit slip, charge slip, tax return (income or other), requisition, file, study, graph, tabulation; text messages, Bloomberg, Facebook, Twitter, LinkedIn, Vine, Instagram, WhatsApp, Yahoo, Blackberry, Myspace, Google+, Snapchat, Telegram, Reddit or other messaging applications, social media posts, photos, tweets, info pages, updates, notes, videos, blogs, comments, statuses, likes or messages; and any and all other writings and recording of whatever nature, whether signed or unsigned or transcribed, and any other data compilation from which information can be obtained, translated, if necessary, by the respondent through detection devices into reasonable usable form; including, without limitation, all things meeting the definition of "Documents" or "electronically stored information" set forth in Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, or meeting the definition of "writings and recordings" set forth in Rule 1001 of the Federal Rules of Evidence.  Any document with any marks as initials, comments, or notations of any kind is not deemed to be identical to one without such marks and is a separate document within the meaning of this term.

12.    "Exclusivity Agreement" shall mean any agreement between Gordon Brothers, on the one hand, and the ABL Lenders and/or the Agent, on the other hand, concerning exclusivity in connection with any matter concerning the Debtors, including the Going-Concern Sale Process, the Liquidating Asset Sales Process or the ABL Lenders' claims against the Debtors.

13.     "Forbearance Agreement" shall mean any forbearance agreement and related amendments between the Debtors, on the one hand, and the ABL Lenders and/or the Agent, on the other hand, in connection with the ABL Credit Agreement.

14.     "Going-Concern Sales Process" shall mean the pre-petition going-concern sale process wherein the Debtors retained Piper Sandler & Company to market their assets to third parties as a going concern.

15.     "Gordon Brothers" shall mean Gordon Brothers Commercial & Industrial, LLC, 1903 Partners, LLC, and any of their respective current or former affiliates, subsidiaries, parent corporations, predecessors, or successor entities and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives.

16.     "Gordon Brothers Bid" shall mean the liquidation bid that the Debtors received from Gordon Brothers in connection with the Liquidating Asset Sales Process.

17.     "Including" means "including, without limitation" or "including, but not limited to."

18.     "Liquidating Asset Sales Process" shall mean the pre-petition liquidating sales process whereby the Debtors sought bids from equipment liquidators.

19.     "Petition Date" shall mean September 11, 2025.

20.     "Regarding," "in connection with," "relating to," and/or "referring to" shall be construed to mean, without limitation, relating to, referring to, describing, evidencing, constituting, discussing, supporting, pertaining to, containing, analyzing, evaluating, studying, recording, showing, memorializing, reporting on, commenting on, mentioning, reviewed in conjunction with, setting forth, contradicting, refuting, considering, or recommending, in whole or in part.

21.     "<u>Relate</u>" and its variants encompass the terms "refer," "reflect," "constitute," "evidence," "in connection with," and "concern" and shall be construed to bring within the scope of the Document Request, as applicable, all documents and information that comprise, evidence, constitute, describe, explicitly or implicitly refer to, were reviewed in conjunction with, or were generated as a result of the subject matter of the Document Request, as applicable, including, but not limited to, all documents and information that reflect, record, memorialize, discuss, evaluate, consider, review, report, or otherwise evidence the existence of the subject matter of the Document Request, as applicable.

## **INSTRUCTIONS**

The preceding definitions apply to each of these instructions and for purposes of these Document Requests; the following instructions shall be followed:

1.      In accordance with Rule 34(a) of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, the Document Requests shall be deemed to include any document now or at any time in your possession, custody, or control, including, but not limited to, documents in the possession, custody, or control of any of your current or former affiliates, subsidiaries, parent corporations, predecessors, or successor entitles and all of their respective current or former directors, officers, employees, agents, attorneys, advisors, and representatives, or other person acting or purporting to act on its or their behalf.  A document is deemed to be in your possession, custody, or control if it is in your physical custody, or if it is in the physical custody of any other person or entity and you: (i) own such document in whole or in part; (ii) have a right, by contract, statute, or otherwise, to use, inspect, examine, or copy such document on any terms; (iii) have an understanding, express or implied, that you may use, inspect, examine, or copy such document when you sought to do so,

or (iv) as a practical matter, have been able to use, inspect, examine or copy such document on any terms.  If any requested document was, but no longer is, in your control, state the disposition of each such document.

2.      As the term "possession" pertains to e-mails, the term includes, but is not limited to, e-mails contained in your electronic e-mail directories containing (i) "deleted" e-mails which have not been permanently deleted, including all subdirectories irrespective of the title of such subdirectories; (ii) "sent" e-mails, including all subdirectories irrespective of the title of such subdirectories; and (iii) "received" e-mails, including all subdirectories irrespective of the title of such subdirectories.

3.      The word "all" shall also include "each of," and vice versa.  The word "any" shall be construed to mean "any and all" where the effect of such construction is to broaden the scope of the Document Requests.

4.      In responding to each Document Request, you are to review and search all relevant files of appropriate entities and persons.

5.      All Document Requests shall be deemed to include requests for any and all transmittal sheets, cover letters, enclosures, or any other annexes or attachments to the documents.

6.      You are to produce the original and all non-identical copies, including all drafts of each document requested.  If you are not able to produce the original of any document, please produce the best available copy and all non-identical copies, including drafts.  Any document that cannot be produced in full shall be produced to the fullest extent possible.

7.      In accordance with Rule 34(b) of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable,

documents shall be produced as they are kept in the ordinary course of business or shall be organized and labeled to correspond with the categories in each Document Request.

8.     For Documents maintained in paper format, the following specifications should be used for production:

a.     Scanned images should be produced as single-page black-and-white TIFF files in group IV format imaged at 300 dpi (or color JPEG).

b.     Each filename must be unique and match the Bates number of the page.  The filename should not contain any blank spaces and should be zero padded (for example ABC000000001).

c.     Each production volume should have its own unique name and a consistent naming convention (for example ZZZ001 or SMITH001).

d.     To the extent that Documents have been run through Optical Character Recognition ("OCR") software in the course of reviewing the Documents for production, full text should also be delivered for each Document.  Text should be delivered on a Document level and may be included in an appropriately formatted text file (".TXT") that is named to match the first Bates number of the Document.

9.     For documents that originated and are maintained in electronic format ("Electronically Stored Information"), the following specifications should be used for production:

a.     Documents should be produced in such fashion as to identify the location (i.e., the network file folder, hard drive, backup tape, or other location) where the Documents are stored and, where applicable, the natural person in whose possession they were found, or on whose hardware device they reside or are stored.

8

If the storage location was a file share or work group folder, that should be specified as well.

b.      Attachments, enclosures, and/or exhibits to any parent Documents should also be produced and proximately referenced to the respective parent Documents containing the attachments, enclosures, and/or exhibits.

c.      For standard Documents, emails, and presentations originating in electronic form, Documents should be produced as TIFF images using the same specifications as set forth above for paper Documents, with a delimited text file (using the delimiters detailed below) containing the following extracted metadata fields: (i) Beginning Production Number; (ii) Ending Production Number; (iii) Beginning Attachment Range; (iv) Ending Attachment Range; (v) Custodian; (vi) Original Location Path; (vii) Email Folder Path; (viii) Document Type; (ix) Author; (x) Title; (xi) File Name; (xii) File Ext; (xiii) File Size; (xiv) MD5 Hash; (xv) Date Last Modified; (xvi) Date Created; (xvii) Date Sent; (xviii) Time Sent [HH:MM:SS]; (xix) MessageID; (xx) Date Received; (xxi) From; (xxii) Recipients; (xxiii) Copyees; (xxiv) Blind Copyees; (xxv) Pages; (xxvi) Email Subject; (xxvii) Native link path; and (xxviii) Extracted Text (not OCR Text) produced as separate .TXT files.

10.    When converting Electronically Stored Information from its native format into its production format: (a) all tracked changes shall be retained in the manner in which they existed when the file was collected; (b) OLE Embedded files shall not be extracted as separate Documents; (c) author comments shall be retained in the manner in which they existed when the file was collected; (d) hidden columns and rows shall be retained in the manner in which they existed when

the file was collected; (e) presenter notes shall be retained in the manner in which they existed when the file was collected; and (f) auto-populated fields shall be replaced with descriptive text for the item.  For example, auto-populating "page number" fields shall be replaced with the text "PAGE #," auto-populating "date" fields shall be replaced with the text "DATE," and auto-populating "file path" fields shall be replaced with the text "PATH" (or other similar text).

11.     If any responsive document is known to have existed and cannot now be located, or has been destroyed, discarded, or otherwise disposed, set forth a complete statement of the circumstances surrounding such loss, destruction, discarding, or other disposition, including:

       a.     A description of the document, including the date, a summary of its contents and the identity of its author and the persons(s) to whom it was sent or shown:

       b.     The last known custodian;

       c.     Whether the document is missing or lost or was destroyed, discarded, or otherwise disposed;

       d.     The date of loss, destruction, discarding, or other disposition;

       e.     The reason(s) for destruction, discarding, or other disposition;

       f.     The person(s) authorizing or carrying out such destruction, discarding, or other deposition; and

       g.     The efforts made to locate lost or misplaced documents.

12.     If there are no documents responsive to a specific request, so state in writing.

13.     If you know of any documents responsive to a particular request but cannot produce them, so state, produce the documents within your possession, custody or control on the subject matter sought, and identify each person whom you believe has documents responsive to the request.

14.     In the event you seek to withhold any document, thing, or information on the basis that it is properly entitled to some privilege or other limitation of discovery, you shall produce as much of the document concerned as to which no claim of privilege or other limitation of discovery is made.  With respect to documents or portions of documents for which a claim of privilege or other limitation of discovery is made, you are instructed to provide a numeral list of the document(s) and thing(s) for which a privilege or limitation is claimed that (1) identifies the nature of the privilege or limitation (including work product) asserted and, if the privilege or limitation is governed by state law, indicate the state of the privilege rule or other limitation invoked; and (2) provides the following information in the objection, unless divulgence of such information would cause disclosure of the allegedly privileged or otherwise protected information:  (i) the type of document; (ii) the name and capacity of each author and recipient of the document; (iii) the general subject matter of the document in a manner sufficient to support the privilege or other protection claimed; (iv) the date of the document; (v) such other information as is sufficient to identify the document for a subpoena *duces tecum*, including, where appropriate, the author(s) of the document, the addressee(s) of the document, and any other recipient(s) shown in the document, and, where not apparent, the relationship of the author(s), addressee(s), and recipient(s) to each other; and (vi) the same information referenced in (i)-(v) above for each enclosure or attachment to each listed document if the enclosure or attachment is also withheld from production. Notwithstanding the assertion of any privilege or other protection, any requested document that contains responsive, non-privileged or protected information should be produced, but that portion of the document for which the privilege or other protection is asserted may be redacted, provided that the redacted portion is identified and described consistently according to the requirements listed herein.

15.     Each definition, instruction, and Document Request herein shall be construed independently and not with reference to any other definition, instruction, or Document Request, for the purposes of limitation.

16.     If any meaning of any term in any Document Request herein is unclear to you, without waiver of the right to seek a full and complete response to the Document Request, you shall assume a reasonable meaning, state what the assumed meaning is, and respond to the Document Request according to the assumed meaning.

17.     In accordance with Rule 34 of the Federal Rules of Civil Procedure, as incorporated by Rules 7034 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable, objections to any part of these Document Requests shall be stated in full and with specificity.  In the event you interpose an objection to a Document Request, you must produce the documents to which objection is not made or provide testimony or information not objected to, as the case may be.

18.     Each Document Request shall be deemed continuing so as to require prompt supplementation if you obtain, generate, or discover additional documents or information.  If, after responding, you obtain or become aware of any additional documents or information responsive to these Document Requests, production of such additional documents or information shall be made forthwith as required by Rule 26 of the Federal Rules of Civil Procedure, as incorporated by Rules 7026 and 9014 of the Federal Rules of Bankruptcy Procedure, as applicable.

19.     "Including" shall not be construed to limit the scope of any Document Request. Whenever necessary to bring within the scope of a Document Request documents or information that might otherwise be construed to be outside its scope:

> a.     The use of a verb in any tense shall be construed as the use of that verb in all other tenses;

b.     The use of a word in its singular form shall be deemed to include within its use the plural form, and vice versa;

c.     The use of the masculine form of a noun or pronoun shall include the feminine form, and vice versa; and

d.     The use of the conjunctive or disjunctive, respectively, shall be construed as necessary to be inclusive rather than exclusive.

20.     Each paragraph, subparagraph, clause, and word therein should be construed independently and not by reference to any other paragraph, subparagraph, clause or word herein for purposes of limitation.

21.     Unless another time period is specified, the relevant time period for these Document Requests is the time period January 1, 2025, to the date that you respond to these Document Requests.

## DOCUMENT REQUESTS

1.　　Any formal or informal agreements or arrangements between the ABL Lenders and/or the Agent, on the one hand, and Gordon Brothers, on the other hand, relating to the Debtors, including, but not limited to, any claims of the ABL Lenders and/or the Agent against the Debtors.

2.　　Any Exclusivity Agreement.

3.　　Any formal or informal agreements, arrangements, offers, or term sheets between the ABL Lenders and/or the Agent, on the one hand, and Gordon Brothers, on the other hand, relating to Gordon Brothers' potential purchase, assignment or assumption of the ABL Loan or the ABL Lenders' rights in connection with the ABL Loan.

4.　　Any formal or informal agreements or arrangements between the ABL Lenders and/or the Agent, on the one hand, and Gordon Brothers, on the other hand, relating to the Forbearance Agreements.

5.　　Any analyses, reports, or evaluations of the Diversified Bid.

6.　　Any analyses, reports, or evaluations of the Gordon Brothers Bid.

7.　　Any analyses, reports, or evaluations comparing or contrasting the Diversified Bid with the Gordon Brothers Bid.

8.　　Any valuation of the Debtors or their assets.

September 14, 2025
New York, New York

*/s/ Samuel P. Hershey*

**WHITE & CASE LLP**
Charles R. Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone:   (713) 496-9700
Email:          charles.koster@whitecase.com


- and -

**WHITE & CASE LLP**
David M. Turetsky (*pro hac vice* pending)
Samuel P. Hershey (*pro hac vice* pending)
1221 Avenue of the Americas
New York, New York 10020
Telephone:   (212) 819-8200
Email:          david.turetsky@whitecase.com
                   sam.hershey@whitecase.com

**WHITE & CASE LLP**
Roberto Kampfner (*pro hac vice* pending)
Patrick Wu (Texas Bar No. 24117924)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone:   (213) 620-7700
Email:          rkampfner@whitecase.com
                   patrick.wu@whitecase.com


- and -

**WHITE & CASE LLP**
Fan B. He (*pro hac vice* pending)
Kristin Schultz (*pro hac vice* pending)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone:   (305) 371-2700
Email:          fhe@whitecase.com
                   kristin.schultz@whitecase.com

*Proposed Counsel to the Debtors and Debtors in Possession*

15

# **EXHIBIT B**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| Worldwide Machinery Group, Inc., *et al.*,[1] | ) | Case No. 25-90379 (CML) |
|  | ) | Jointly Administered |
| Debtors. | ) |  |
|  | ) |  |

**KEY EQUIPMENT FINANCE'S RESPONSES AND OBJECTIONS TO DEBTORS'
FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS IN
CONNECTION WITH THE *DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF
INTERIM AND FINAL ORDERS (I) AUTHORIZING DEBTORS TO USE CASH
COLLATERAL, (II) GRANTING ADEQUATE PROTECTION FOR THE USE OF CASH
COLLATERAL, (III) SCHEDULING A FINAL HEARING, AND (IV) GRANTING
<u>RELATED RELIEF</u>***

Key Equipment Finance, a division of KeyBank National Association, in its capacity as administrative agent (in such capacity, the "<u>Agent</u>") for the Senior Secured Lenders,[2] by and through its undersigned counsel, pursuant to Federal Rule of Civil Procedure 34, made applicable here by Federal Rule of Bankruptcy Procedure 7034, hereby provides its objections and responses to Debtors' First Set of Requests for the Production of Documents to Key Equipment Finance (the "<u>First Set of Document Requests</u>") in Connection with the *Debtors' <u>Emergency</u> Motion for Entry of Interim and Final Orders (I) Authorizing Debtors to Use Cash Collateral, (II) Granting Adequate Protection for the Use of Cash Collateral, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* (the "<u>Cash Collateral Motion</u>").

---

[1] The debtors (the "<u>Debtors</u>") in these chapter 11 cases (the "<u>Cases</u>"), along with the last four digits of each Debtor's federal tax identification number, are: Worldwide Machinery Group, Inc. ("<u>Worldwide Machinery Group</u>") (8029), Worldwide Machinery, Ltd. ("<u>WWM</u>") (3666), Worldwide Operating, Inc. ("<u>Worldwide Operating</u>") (7023), and Worldwide Machinery GP, LLC ("<u>WWM GP</u>") (5399).

[2] "<u>Senior Secured Lenders</u>" shall have the meaning ascribed to it in the Preliminary Objection [Dkt. No. 45].

The responses and objections set forth below are based upon information available to the Agent at this time, based upon a reasonable and diligent search. The Agent's investigation is ongoing, and the Agent reserves the right to modify these responses and objections based upon subsequently discovered facts.

## **GENERAL OBJECTIONS**

The following general objections are set forth to avoid excessive duplication, and the Agent incorporates these general objections into each and every individual response herein as if repeated in the text of the response and into each and every amendment, supplement, or modification to these responses. The assertion of additional specific objections to certain definitions or any document request shall not be construed as the waiver of any applicable general objection.

1.      The Agent objects that the Debtors' First Set of Document Requests, despite being issued in connection with the Cash Collateral Motion, seek information that is neither relevant nor proportional to the needs of the case. The First Set of Document Requests are focused on, among other things, the Senior Secured Lenders' relationship with Gordon Brothers, which has nothing to do with the value of the cash collateral, the Debtors' proposed use of the cash collateral, or whether the Senior Secured Lenders are adequately protected. The First Set of Document Requests impose an undue burden on the Agent because the effort and expense of identifying, gathering, and producing the requested documents is not proportionate to the minimal (if any) relevance the information may have to the Cash Collateral Motion. The First Set of Document Requests therefore seeks information that is outside the scope of discovery as defined in Federal Rule of Civil Procedure 26(b)(1).

2.      The Agent objects to the Definitions and Instructions to the extent they purport to impose obligations on the Agent that are inconsistent with, not found in, or exceed the

-2-

requirements of the Federal Rules, Bankruptcy Rules or Local Rules, or any court order or directive.

3.      The Agent objects to each request to the extent it seeks documents or imposes obligations beyond that set forth in the Federal Rules and Bankruptcy Rules. The Agent will provide its responses to the requests in compliance with the Federal Rules, Bankruptcy Rules and Local Rules.

4.      The Agent objects to each request to the extent it seeks documents protected from disclosure by the attorney-client privilege, the work product doctrine, the common interest privilege, or any other privilege or protection. The Agent does not intend to waive any such privileges or protections, and to the extent that any privileged document is inadvertently produced in response to any request, such production is not intended as, and should not be construed as, a waiver of any such privilege or protection.

5.      The Agent objects to each request to the extent it seeks documents containing trade secrets or proprietary or other confidential business information.

6.      A substantive response to any request does not constitute an acceptance by the Agent of the factual assertions made in such request, an acceptance by the Agent of any defined terms used in the request, or an admission that the documents requested exist or are relevant, material, or admissible. The Agent responds to each request without conceding the relevance or materiality of any subject matter and reserves the right to object to any further discovery or to the admissibility of any document at a hearing or the trial in this action.

7.      The Agent objects to each request to the extent it seeks documents that contain a nonparty's proprietary or confidential information that is subject to a nondisclosure or confidentiality agreement, unless the nonparty consents in writing to such disclosure.

8.      The Agent objects to the Debtors' definition of "Document" to the extent it purports to impose obligations on the Agent that are inconsistent with, not found in, or exceed the requirements of the Federal Rules, Bankruptcy Rules, Local Rules, or any court order or directive.

## RESPONSES AND OBJECTIONS TO FIRST SET OF DOCUMENT REQUESTS

1.      Any formal or informal agreements or arrangements between the ABL Lenders and/or the Agent, on the one hand, and Gordon Brothers, on the other hand, relating to the Debtors, including, but not limited to, any claims of the ABL Lenders and/or the Agent against the Debtors.

**RESPONSE:** The Agent objects to this request because it seeks information that is not relevant to any disputed issue related to the Cash Collateral Motion and is therefore outside the scope of permissible discovery. "[A]greements or arrangements between the ABL Lenders and/or the Agent" and Gordon Brothers have no bearing on the value of the cash collateral, the Debtors' use of the cash collateral, or whether the Senior Secured Lenders are adequately protected. The Agent further objects that the request imposes an undue burden because the effort and expense of identifying, gathering, and producing the requested documents is not proportionate to the minimal (if any) relevance the information may have. Discovery is not permitted merely for purposes of exploration or harassment, and the burden of producing the requested documents outweighs any probative value. Responsive documents are being withheld on the basis of the stated objections.

2.      Any Exclusivity Agreement.

**RESPONSE:** The Agent objects to this request because it seeks information that is not relevant to any disputed issue related to the Cash Collateral Motion and is therefore outside the scope of permissible discovery. "Any Exclusivity Agreement" has no bearing on the value of the cash collateral, the Debtors' use of the cash collateral, or whether the Senior Secured Lenders are adequately protected. The Agent further objects that the request imposes an undue burden because

the effort and expense of identifying, gathering, and producing the requested documents is not proportionate to the minimal (if any) relevance the information may have. Discovery is not permitted merely for purposes of exploration or harassment, and the burden of producing the requested documents outweighs any probative value. Responsive documents are being withheld on the basis of the stated objections.

3.      Any formal or informal agreements, arrangements, offers, or term sheets between the ABL Lenders and/or the Agent, on the one hand, and Gordon Brothers, on the other hand, relating to Gordon Brothers' potential purchase, assignment or assumption of the ABL Loan or the ABL Lenders' rights in connection with the ABL Loan.

**RESPONSE:** The Agent objects to this request because it seeks information that is not relevant to any disputed issue related to the Cash Collateral Motion and is therefore outside the scope of permissible discovery. Any "agreements, arrangements, offers, or term sheets between the ABL Lenders and/or the Agent" and Gordon Brothers have no bearing on the value of the cash collateral, the Debtors' use of the cash collateral, or whether the Senior Secured Lenders are adequately protected.  The Agent further objects that the request imposes an undue burden because the effort and expense of identifying, gathering, and producing the requested documents is not proportionate to the minimal (if any) relevance the information may have. Discovery is not permitted merely for purposes of exploration or harassment, and the burden of producing the requested documents outweighs any probative value. Responsive documents are being withheld on the basis of the stated objections.

4.      Any formal or informal agreements or arrangements between the ABL Lenders and/or the Agent, on the one hand, and Gordon Brothers, on the other hand, relating to the Forbearance Agreements.

**RESPONSE:** The Agent objects to this request because it seeks information that is not relevant to any disputed issue related to the Cash Collateral Motion and is therefore outside the scope of permissible discovery. "[A]greements or arrangements between the ABL Lenders and/or the Agent" and Gordon Brothers" have no bearing on the value of the cash collateral, the Debtors' use of the cash collateral, or whether the Senior Secured Lenders are adequately protected. The Agent further objects that the request imposes an undue burden because the effort and expense of identifying, gathering, and producing the requested documents is not proportionate to the minimal (if any) relevance the information may have. Discovery is not permitted merely for purposes of exploration or harassment, and the burden of producing the requested documents outweighs any probative value. Responsive documents are being withheld on the basis of the stated objections.

5.    Any analyses, reports, or evaluations of the Diversified Bid.

**RESPONSE:** The Agent objects that this request seeks information that is not relevant to the Cash Collateral Motion or any disputed issue related thereto. The Agent further objects that this request is premature to the extent it seeks discovery related to motions that have not yet been filed. The Agent further objects that this request seeks information that is protected from disclosure by the attorney-client privilege, work product doctrine and/or common interest privilege. Other than analyses, reports, or evaluations prepared by the Debtors, any such analyses, reports or evaluations in the custody and control of the Agent were prepared in anticipation of litigation and therefore are not discoverable. Responsive documents are being withheld on the basis of the stated privileges and objections. Non-privileged, responsive document(s) not subject to the stated objections will be produced, if any.

6.    Any analyses, reports, or evaluations of the Gordon Brothers Bid.

**RESPONSE:** The Agent objects that this request seeks information that is not relevant to the Cash

Collateral Motion or any disputed issue related thereto. The Agent further objects that this request is premature to the extent it seeks discovery related to motions that have not yet been filed. The Agent further objects that this request seeks information that is protected from disclosure by the attorney-client privilege, work product doctrine and/or common interest privilege. Other than analyses, reports, or evaluations prepared by the Debtors, any such analyses, reports or evaluations in the custody and control of the Agent were prepared in anticipation of litigation and therefore are not discoverable. Responsive documents are being withheld on the basis of the stated privileges and objections.

**RESPONSE:**

7.      Any analyses, reports, or evaluations comparing or contrasting the Diversified Bid with the Gordon Brothers Bid.

**RESPONSE:**  The Agent objects that this request seeks information that is not relevant to the Cash Collateral Motion or any disputed issue related thereto. The Agent further objects that this request is premature to the extent it seeks discovery related to motions that have not yet been filed. The Agent further objects that this request seeks information that is protected from disclosure by the attorney-client privilege, work product doctrine and/or common interest privilege. Other than analyses, reports, or evaluations prepared by the Debtors, any such analyses, reports or evaluations in the custody and control of the Agent were prepared in anticipation of litigation and therefore are not discoverable. Responsive documents are being withheld on the basis of the stated privileges and objections.  Non-privileged, responsive document(s) not subject to the stated objections will be produced, if any.

**RESPONSE:**

8.      Any valuation of the Debtors or their assets.

**RESPONSE:** The Agent objects to the extent that this request seeks information that is equally available to or already in the possession of the Debtors. The Agent further objects to the extent that this request seeks information that is protected from disclosure by the attorney-client privilege, work product doctrine, common interest privilege or any other privilege or protection. Subject to and without waiving the foregoing objection, responsive, non-privileged documents will be produced.

Houston, Texas
September 26, 2025

/s/ *William A. (Trey) Wood III*

| | |
|---|---|
| **BRACEWELL LLP** | **CROWELL & MORING LLP** |
| William A. (Trey) Wood III | Frederick D. Hyman |
| Jason G. Cohen | Two Manhattan West |
| Nancy McEvily Davis | |
| Jonathan L. Lozano | 375 Ninth Avenue |
| 711 Louisiana Street, Suite 2300 | New York, NY 10001 |
| Houston, Texas 77002 | Telephone: (212) 803-4028 |
| Telephone:       (713) 223-2300 | |
| Facsimile:       (800) 404-3970 | -and- |
| Email:       trey.wood@bracewell.com | |
|              jason.cohen@bracewell.com | **CROWELL & MORING LLP** |
|              nancy.davis@bracewell.com | Randall Hagen |
|              jonathan.lozano@bracewell.com | |
| | 1001 Pennsylvania Avenue, NW |
| | Washington, DC 20004 |
| | Telephone: (202)_ 624-2712 |
| *Co-Counsel to the Administrative Agent* | *Co-Counsel to the Administrative Agent* |