IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) Chapter 11 |
| | ) |
| Worldwide Machinery Group, Inc., *et al*., | ) Case No. 25-90379 (CML) |
| | ) Jointly Administered |
| Debtors.[1] | ) |
| | ) |

**KEY EQUIPMENT FINANCE'S RESPONSE TO THE DEBTORS' EMERGENCY MOTION TO COMPEL PRODUCTION OF DOCUMENTS**

Key Equipment Finance, a division of KeyBank National Association, as Agent, on behalf of the Senior Secured Lenders,[2] files this response in opposition to the Debtors' Emergency Motion to Compel Production (Dkt. No. 115, the "Motion to Compel").

## I. INTRODUCTION

1. The Debtor seeks to compel the Agent to produce certain documents reflecting prepetition negotiations and agreements with Gordon Brothers for the sale of the Senior Secured Lenders' debt. What the Debtors really desire is a disclosure of the then-agreed upon purchase price contained in those documents. The amount of the purchase price, however, has no relevance to any claim or defense asserted in the Cash Collateral Motion, the Lift Stay Motion, or the Debtors' Sale Motion,[3] and therefore is outside the scope of discovery. Nonetheless, to minimize the cost of needless motion practice, the Agent offered to produce the requested documents with the price term redacted, but the Debtors refused.

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Worldwide Machinery Group, Inc. (8029), Worldwide Machinery, Ltd. (3666), Worldwide Operating, Inc. (7023), and Worldwide Machinery GP, LLC (5399). The location of Debtor Worldwide Machinery Group, Inc.'s corporate headquarters is 2200 Post Oak Boulevard, Suite 1000, Houston, Texas 77056.
[2] "Senior Secured Lenders" shall have the meaning ascribed to it in the Preliminary Objection [Dkt. No. 45].
[3] "Cash Collateral Motion," "Lift Stay Motion," and "Sale Motion" have the meanings ascribed to them in the Motion to Compel.

IM-#10856875

2. The Debtors' attempts to articulate relevance focus on other provisions of the requested documents and fail to adequately explain why disclosure of the price term relates to any of the disputed motions, *other than* to argue that the Debtors want to compare the price term in the requested documents to the "value" of the Diversified Bid. But disclosure of the price term—even if limited to professionals—risks an adverse impact on the sale process and a loss of value to the Senior Secured Lenders and other creditors. The Agent therefore asks the Court to deny the Motion to Compel entirely or, if inclined to permit any production, permit redaction of the price term.

## II. ARGUMENT

3. Although the scope of discovery is broad, it is not unlimited. Federal Rule of Civil Procedure 26 permits discovery:

> [R]egarding any nonprivileged matter *that is relevant to any party's claim or defense* and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). The documents the Debtors ask the Court to compel are not relevant to any claim or defense pertaining to any of the three motions the Debtors point to in their Motion to Compel.

4. The Debtors issued their Requests for Production in connection with their Cash Collateral Motion. The issues relevant to the Cash Collateral Motion relate to whether the Senior Secured Lenders are adequately protected, the value of the Debtors' assets, and the Debtors' intended use of the cash collateral. The requested documents do not relate to any of these points. The Debtors nevertheless argue that the requested documents are relevant to the Cash Collateral Motion because (1) the existence of an agreement was mentioned in the Agent's Initial Objection;

IM-#10856875

and (2) they believe that the documents "*may*" constitute grounds for equitably subordinating the Senior Secured Lenders' claims.

5. The existence of an agreement with Gordon Brothers is not in dispute—indeed, it was the Debtors' outside counsel who first provided the Agent with the initial offer from Gordon Brothers. Likewise, the applicable Credit Agreement is clear that the Senior Secured Lenders are permitted to assign all or a portion of the "Commitments" to a third party without the consent of the "Borrower" if an event of default has occurred. (See Credit Agreement, Section 9.04, attached as **Exhibit A**). The Debtors are aware of those facts now, without any document production from the Agent. Facts related to the existence of an agreement with Gordon Brothers are not "at issue" as there is no dispute between the parties on that point. *See* Motion to Compel at 8. But ultimately, neither the existence of an agreement nor the amount agreed upon for the potential sale of debt bears on the value of the Debtors' assets or relates in any way to adequate protection.

6. As for the suggestion that the Court should consider the Debtors' possible assertion of equitable subordination, that theory is not a defense to adequate protection. Equitable subordination "is a legally distinct proceeding which seeks to prioritize order of allowed claims based on equities." *In re County of Orange*, 219 B.R. 543, 559 (Bankr. C.D. Cal. 1997). Equitable subordination does not destroy a creditor's right to adequate protection because "equitable subordination of [a] claim must not be inconsistent with the provisions of the Bankruptcy Act." *In re Enron Corp.*, 333 B.R. 205, 217 (Bankr. S.D.N.Y. 2005) (citing *In re Mobile Steel Co.*, 563 F.2d 692, 700 (5th Cir. 1977). The Bankruptcy Code requires adequate protection in order for a debtor to access cash collateral, and nothing about the possibility of equitable subordination changes that requirement. Therefore, the specter of equitable subordination does not bring the requested documents within the scope of discovery.

7. Furthermore, even if equitable subordination was a valid defense to adequate protection (it is not), the Debtors' explanation of how the requested documents are relevant to an equitable subordination claim focuses on the "exclusivity agreement with Gordon Brothers," which the Debtors believe may violate Gordon Brothers' requirements under its NDA with the Debtors. Motion to Compel at 8. If the terms of the exclusivity agreement were the focus of the Debtors' Motion to Compel, then they would have accepted the Agent's offer to produce the documents with the price term redacted. But the Debtors refused that reasonable offer.

8. Finally, the Debtors argue that the requested documents are relevant to the Lift Stay Motion and the Sale Motion so that they can compare the "terms under which the ABL Lenders were willing to sell their debt" to the Diversified Bid. *Id*. And the Debtors are most interested in one particular term: the price term. Acknowledging that this information, in the hands of the Debtor itself, would be highly prejudicial to the Senior Secured Lenders' position and strategy in this case, the Debtors argue that the proposed Confidentiality and Protective Order should allay any concern that the Senior Secured Lenders have about their production of documents. Specifically, the Debtors offer to limit distribution to the Debtors' professionals and the members of the Debtors' restructuring committee. But the Senior Secured Lenders' concerns go beyond those addressed in the proposed Confidentiality and Protective Order.

9. The Senior Secured Lenders (and, indeed, all creditors) simply seek the highest possible recovery for their claims. Disclosure of the amount that the Senior Secured Lenders *were* willing to accept at a different time, under different circumstances, for debt and not assets, outside of bankruptcy, is immaterial and risks creating the incorrect perception of a "target" recovery for the Debtors and their professionals. Rather than pushing the process to the highest possible number, disclosure of the price term invites solving backwards for a perceived target number.

Under these circumstances, there is no need or benefit to disclosure, only the potential for unfair prejudice to the Senior Secured Lenders.

### III.   CONCLUSION

10. None of the requested documents are relevant to any claim or defense at issue in the Cash Collateral Motion, the Motion to Lift Stay, or the Sale Motion and the Agent requests that the Motion to Compel be denied. To the extent that the Court finds production is required, the price term should be redacted.

WHEREFORE, the Agent requests that the Motion to Compel be denied and the Agent be granted such other and further relief as the Court deems just and proper.

/s/  *William A. (Trey) Wood III*

| | |
|---|---|
| **BRACEWELL LLP** | **CROWELL & MORING LLP** |
| William A. (Trey) Wood III | Frederick D. Hyman |
| Jason G. Cohen | Two Manhattan West |
| Nancy McEvily Davis | |
| Jonathan L. Lozano | 375 Ninth Avenue |
| 711 Louisiana Street, Suite 2300 | New York, NY 10001 |
| Houston, Texas 77002 | Telephone: (212) 803-4028 |
| Telephone:   (713) 223-2300 | |
| Facsimile:    (800) 404-3970 | -and- |
| Email:          trey.wood@bracewell.com | |
| jason.cohen@bracewell.com | **CROWELL & MORING LLP** |
| nancy.davis@bracewell.com | Randall Hagen |
| jonathan.lozano@bracewell.com | |
| | 1001 Pennsylvania Avenue, NW |
| | Washington, DC 20004 |
| | Telephone: (202)_ 624-2712 |
| *Co-Counsel to the Administrative Agent* | *Co-Counsel to the Administrative Agent* |

IM-#10856875

**CERTIFICATE OF SERVICE**

    I hereby certify that on October 3, 2025, I served a true and correct copy of the above and foregoing instrument via the Court's CM/ECF electronic system to all parties consenting to service through same.

                                        */s/ William A. (Trey) Wood III*
                                        William A. (Trey) Wood III

IM-#10856875