## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Worldwide Machinery Group, Inc., *et al.*,[1] | ) | Case No. 25-90379 (CML) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | **Re: Docket Nos. 101, 206** |

## DEBTORS' STATEMENT WITH RESPECT TO THE NOTICE OF SUBMISSION OF CREDIT BID BY ADMINISTRATIVE AGENT

The debtors and debtors in possession in the above-captioned chapter 11 cases (collectively, the "**Debtors**") submit this statement (the "**Statement**") with respect to the *Notice of Submission of Credit Bid by Administrative Agent* [Docket No. 206] (the "**Credit Bid Notice**") filed by Key Equipment Finance, a division of KeyBank National Association, in its capacity as administrative agent (the "**ABL Administrative Agent**") for the ABL Lenders, and respectfully state as follows:

## STATEMENT

1.     The Debtors seek to effectuate a value-maximizing sale transaction.  On September 26, 2025, when the Debtors filed the Sale Motion,[2] the Going-Concern Transaction was the best option available after a comprehensive process.  The Debtors nevertheless invited potential bidders to submit alternative bids, with no procedural or substantive hurdles to qualify, and no submission

---

[1]     The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Worldwide Machinery Group, Inc. (8029), Worldwide Machinery, Ltd. (3666), Worldwide Operating, Inc. (7023), and Worldwide Machinery GP, LLC (5399).  The location of Debtor Worldwide Machinery Group, Inc.'s corporate headquarters is 2200 Post Oak Boulevard, Suite 1000, Houston, Texas 77056.

[2]     The Sale Motion refers to the *Debtors' Motion for Entry of an Order (I) Authorizing and Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Interests; (II) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; (III) Authorizing the Disposal of Any Burdensome Assets* [Docket No. 101].  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Sale Motion.

deadlines.  The Debtors welcomed all comers, and in fact received bids, including the October 8

bid from Hilco and Ritchie Brothers described in the Debtors' reply in support of the Sale Motion

[Docket No. 213].  The Debtors will continue to consider all bids and are prepared to seek approval

of any superior proposal they may receive at or prior to the hearing to consider the Sale Motion in

lieu of the Going-Concern Transaction.

2.      The Debtors have wondered whether the ABL Administrative Agent would submit

a credit bid.  The Debtors have in fact been asking the ABL Administrative Agent about its intent

to credit bid for several weeks.  Although the ABL Administrative Agent has long had the

opportunity to do so, it addressed the question for the first time on October 20.  A mere two days

before the hearing to consider the Sale Motion, the ABL Administrative Agent filed the Credit Bid

Notice and sent counsel a form of purchase agreement.  Notwithstanding the eleventh-hour nature

of the submission, the Debtors have considered the ABL Administrative Agent's notice of intent

to credit bid.  But the ABL Administrative Agent's credit bid suffers from several flaws that leave

the Debtors incapable of assessing its real value and its execution risk, and the ABL Administrative

Agent's ability to credit bid is dubious.

3.      First, the ABL Administrative Agent's credit bid is on its face inferior to the Going-

Concern Transaction.  The terms of the ABL Administrative Agent's credit bid are confidential,

but it provides for a materially lower purchase price than the aggregate consideration under the

Going-Concern Transaction.  And there is no cash component to provide for an orderly winddown

of the chapter 11 cases and the payment of administrative expenses, which would leave the Debtors

administratively insolvent.

4.      Second, the ABL Administrative Agent's credit bid is missing key details that leave

the Debtors unable to assess its value or understand whether it is a bona fide offer.  The credit bid

contemplates that the purchaser *may* assume certain liabilities, but provides no detail or a schedule of assumed liabilities.  The credit bid is also conditioned upon delivery of *all* purchased assets, but does not address how the assets will be collected and delivered, which party will be responsible for that process, and the consequences of missing equipment.  These are not ancillary deal terms. The Debtors rent equipment to customers throughout the nation and the world, and the assumption of liabilities and recovery of property have been focal points of negotiations with all other bidders. Despite this uncertainty, the ABL Administrative Agent's credit bid has a closing milestone of less than one month, which is entirely unrealistic under the best of circumstances and cannot be achieved in any event without funding for the estate, which the ABL Administrative Agent's credit bid does not provide.  Indeed, the ABL Administrative Agent is actively objecting to the Debtors' use of cash collateral.  The Debtors' fiduciary duty to maximize value for their estate does not require them "to mechanically accept a bid with the highest dollar amount," rather, "Debtors are permitted, and in fact are encouraged, to evaluate other factors, such as contingencies, conditions, timing, or other uncertainties in an offer that may render it less appealing."  *In re Family Christian, LLC*, 533 B.R. 600, 622 (Bankr. W.D. Mich. 2015) (collecting cases).

5.     <u>Third</u>, it is unclear whether the ABL Administrative Agent submitted its credit bid in good faith.  The Debtors declined to seek approval of onerous procedures for an expedited postpetition process, but prospective bidders still must participate in good faith.  The last minute nature of the bid and the facts and circumstances both before and during these chapter 11 cases suggest that the ABL Administrative Agent's credit bid may simply be an impermissible effort to frustrate the Going-Concern Transaction.  It may also be an effort to obtain releases of estate claims, including the claims alleged in the Complaint (defined below) filed by the Committee.  The use of a credit bid to whitewash estate claims not only calls the purchaser's good faith into

question, but also leaves the Debtors unable to compare the credit bid to alternatives that do not involve the release of contingent litigation claims.  The ABL Administrative Agent has stonewalled the Debtors' discovery efforts on these topics.  Of course, any evidence of the purchaser's effort to frustrate a value-maximizing sale or interfere with a sale process overseen by this Court would warrant disqualification of the credit bid.  "A court may deny a lender the right to credit bid in the interest of any policy advanced by the Code, such as to ensure the success of the reorganization or to foster a competitive bidding environment."  *See In re Phila. Newspapers, LLC,* 599 F.3d 298, 316 n.14 (3d Cir. 2010); *see also, e.g., In re Free Lance-Star Publ'g Co.*, 512 B.R. 798, 808 (Bankr. E.D. Va. 2014) (limiting a creditor's ability to credit bid where it had engaged in inequitable conduct that "ha[d] depressed enthusiasm for the sale in the marketplace" and limiting the credit bid would "attract renewed interest" and "serve to increase the value realized for the assets").

6.     Fourth, the validity of the ABL Lenders' liens is subject to bona fide dispute and the ABL Administrative Agent does not have an allowed claim (as required by the plain language of section 363(k)).  Although the ABL Administrative Agent, on behalf of itself and the ABL Lenders, filed proofs of claim this past Saturday – apparently for the purpose of trying to credit bid – those claims are disputed.  In particular, the claims were listed as disputed on the Debtors' schedules and are subject to the pending claim objection filed by the Debtors contemporaneously herewith.  The ABL Administrative Agent's claims are therefore not allowed claims and the ABL Administrative Agent should not be permitted to credit bid such claims unless those disputes are resolved in its favor and the Court allows the claims.  *See In re Lee*, 2024 Bankr. LEXIS 296, at *7-8 (Bankr. M.D. Ga. Feb. 7, 2024) (holding that creditor was "not entitled to credit bid because they d[id] not have an allowed claim as required by § 363(k)" because debtor objected to the

creditor's proof of claim and "[i]f an objection to the claim is filed, the claim is no longer deemed allowed until after notice, hearing and the court's determination of the amount of such claim" (citing 11 U.S.C. § 502(b))).  The adversary complaint filed by the Committee alleges that the ABL Lenders entered into an exclusive agreement with a liquidator that prohibited the ABL Lenders from consenting to any transaction involving their collateral and then conditioned any extension of forbearance on the Debtors' blind consent to the sale of the ABL Lenders' debt to that liquidator, subverting the prepetition sale process and requiring the Debtors to file these chapter 11 cases.  *See Complaint Against Key Equipment Financing, Gordon Brothers Commercial & Industrial LLC, and Does 1-100* [Docket No. 225] (the "**Complaint**").  Moreover, the liquidator in question had participated in the Debtors' sale process, submitted an uncompetitive bid, and entered into an exclusivity agreement with the ABL Lenders (complete with its own break fee) in violation of that liquidator's NDA with the Debtors.  The Complaint seeks to equitably subordinate the ABL Lenders' claims and liens and to transfer the ABL Lenders' liens to the estates.  If the ABL Lenders' liens are subordinated or disallowed, they would lack any basis to credit bid under section 363(k) of the Bankruptcy Code or otherwise.  The Court should resolve this dispute before permitting the ABL Administrative Agent to credit bid.  S*ee SEC v. Capital Cove Bancorp LLC*, 2015 U.S. Dist. LEXIS 174856, at *29-30 (C.D. Cal. Oct. 13, 2015) (noting that the court's decision to limit credit bidding was "further supported by [its] finding that a bona fide dispute exists as to [creditor's] liens against the properties at issue"); *In re Fisker Auto. Holdings, Inc.*, 510 B.R. 55, 59-61 (Bankr. D. Del. 2014) (limiting creditor's ability to credit bid as it was unclear how much of creditor's secured claim would ultimately be allowed and the credit bid would undermine the sale process by leaving "no realistic possibility of an auction").  At this

time, the Debtors cannot conclude that the ABL Administrative Agent's credit bid is even legitimate, let alone higher or better than the actionable alternatives.

7.    <u>Fifth</u>, on the current facts, there is otherwise cause to deny or limit the ABL Administrative Agent's credit bid under section 363(k) of the Bankruptcy Code. As noted above, a Court may find "cause" to limit a credit bid "in the interest of any policy advanced by the Code." *See In re Phila. Newspapers, LLC,* 599 F.3d at 316 n.14; *see also SEC v. Capital Cove Bancorp LLC*, 2015 U.S. Dist. LEXIS 174856, at *29 ("Intrinsically, acting for cause looks to the court's equity powers that allow the court to balance the interests of the debtor, its creditors, and the other parties of interest in order to achieve the maximization of the estate and an equitable distribution to all creditors." (internal citations and quotation marks omitted)). Those interests include not only value maximization (which the Debtors believe is accomplished by the Going-Concern Transaction) but also the preservation of the going-concern, jobs, and other equitable interests. *See generally Toibb v. Radloff*, 501 U.S. 157, 163 (1991) (noting that one of Congress' purposes in enacting Chapter 11 was to allow businesses to "revive … and thereby preserve jobs."); *cf. In re After Six, Inc.*, 154 B.R. 876, 884 (Bankr. E.D. Pa. 1993) (noting that "[o]ne of the underlying rationales for the enactment of Chapter 11 is its potential to preserve jobs for the employees" and criticizing debtor for "accord[ing] so little consideration to this element" when selecting winning bidder). The Debtors have conducted an independent and comprehensive sale process, in which all-comers were free to participate, including the ABL Lenders. Whatever disappointment the ABL Lenders may have at the outcome (and to be clear, the Debtors would have preferred that the values be higher), the market has spoken and the results of that process indicate that the Going-Concern Transaction reflects fair value for the Debtors' assets. Moreover, the Going-Concern Transaction preserves the Debtors' business as a going concern and saves approximately 100 jobs.

Setting aside that it would not even facially maximize value, the ABL Administrative Agent's credit bid – submitted at the last minute by a party who has had weeks (if not months) to submit their bid – accomplishes none of these objectives.  And even if the Court were inclined to permit some amount of credit bid, absent agreement with the Debtors, given the ABL Lenders' prior willingness to sell their claim and their delay in participating in the process, the ABL Administrative Agent should not be permitted to credit bid above the amount that the Debtors' estates would have received from such sale.[3]

8.      Pursuit of the ABL Administrative Agent's credit bid at this time would be inconsistent with the Debtors' fiduciary duties to their estates and stakeholders.  *See In re Bakalis*, 220 B.R. 525, 532 (E.D.N.Y. 1998) (noting that "[a] bankruptcy trustee is a conservator of the estate and must, to the extent possible, be risk averse" and holding that trustee exercised proper business judgment in declining to pursue facially higher bid that would have "jeapordiz[ed] virtually assured benefits [for] a bid that exposes the estate to a much greater risk of, among other things, a failed closing and the associated chance of being left with a devalued asset").  The Debtors nevertheless welcome any and all improvements that will make the ABL Administrative Agent's bid actionable and competitive, to the extent to that the ABL Administrative Agent is capable of making such improvements.  The Debtors will consider and evaluate any such improvements in their business judgment as they are entitled to do under the Bankruptcy Code.  With the hearing to

---

[3]      The ABL Lenders' pleadings with the Court have indicated concerns with respect to the sale process, including that its results undervalue the Debtors' assets.  For the reasons set forth in the Debtors' reply brief in support of the Sale Motion, the ABL Lenders' arguments are without merit.  But assuming *arguendo* that a longer sale process could have achieved better results, the ABL Lenders have said throughout these chapter 11 cases that they oppose the use of the Debtors' cash to fund such a process and, in light of this opposition, the ABL Lenders should not be permitted to now use a credit bid to get the Debtors' assets "on the cheap" and leave the Debtors administratively insolvent.

consider the Sale Motion scheduled for October 22, time is of the essence.  The Debtors reserve all rights as they continue to assess all bids.

October 21, 2025
Houston, Texas

/s/ *Charles R. Koster*

**WHITE & CASE LLP**
Charles R. Koster (Texas Bar No. 24128278)
609 Main Street, Suite 2900
Houston, Texas 77002
Telephone:    (713) 496-9700
Email:          charles.koster@whitecase.com


- and -


**WHITE & CASE LLP**
David M. Turetsky (admitted *pro hac vice*)
Samuel P. Hershey (admitted *pro hac vice*)
1221 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 819-8200
Email:          david.turetsky@whitecase.com
                    sam.hershey@whitecase.com

**WHITE & CASE LLP**
Roberto Kampfner (admitted *pro hac vice*)
Patrick Wu (Texas Bar No. 24117924)
555 South Flower Street, Suite 2700
Los Angeles, California 90071
Telephone:    (213) 620-7700
Email:          rkampfner@whitecase.com
                    patrick.wu@whitecase.com


- and -


**WHITE & CASE LLP**
Fan B. He (admitted *pro hac vice*)
Kristin Schultz (admitted *pro hac vice*)
200 South Biscayne Boulevard, Suite 4900
Miami, Florida 33131
Telephone:    (305) 371-2700
Email:          fhe@whitecase.com
                    kristin.schultz@whitecase.com

*Proposed Counsel to the Debtors and Debtors in Possession*

**<u>Certificate of Service</u>**

I certify that on October 21, 2025, I caused a copy of the foregoing document to be served via the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

/s/ *Charles R. Koster*
Charles R. Koster